UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSE L. ENGEL, | ) | Case No. SACV 14-01989-JEM |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | REVERSING DECISION OF THE |
| | ) | COMMISSIONER OF SOCIAL SECURITY |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On December 14, 2014, Rose L. Engel ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance benefits.  The Commissioner filed an Answer on April 13, 2015.  On September 11, 2015, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be reversed and this case remanded for further proceedings in accordance with this Memorandum Opinion and Order and with law.

**BACKGROUND**

Plaintiff is a 64-year-old female who applied for Social Security Disability Insurance benefits on July 14, 2010, alleging disability beginning March 15, 2010.  (AR 109.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 15, 2010, the alleged onset date.  (AR 13, 111.)

Plaintiff's claim was denied initially on April 18, 2011, and on reconsideration on August 19, 2011.  (AR 109.)  Plaintiff filed a timely request for hearing, which was held before Administrative Law Judge ("ALJ") Sharilyn Hopson on August 6, 2012, in Orange, California. (AR 109.)  Plaintiff appeared and testified at the hearing and was represented by counsel.  (AR 109.)  Medical expert ("ME") Samuel Landau, M.D., and vocational expert ("VE") Kelly Winn-Boaitey also appeared and testified at the hearing.  (AR 109.)

The ALJ issued an unfavorable decision on September 10, 2012.  (AR 109-123.)  On November 25, 2013, the Appeals Council vacated the September 10, 2012, hearing decision and remanded the case.[1]  (AR 129-131.)

A remand hearing was held before ALJ Sharilyn Hopson on May 7, 2014, in Orange, California.  (AR 11.)  Plaintiff appeared and testified at the hearing.  (AR 11.)  Plaintiff was represented by counsel.  (AR 11.)  ME John Morse, M.D., and VE Luis Mas, Ph.D., also appeared and testified at the hearing.  (AR 11.)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1.      Whether the ALJ correctly found Rose Engel acquired transferable skills.

---

[1] In its Remand Order, the Appeals Council directed the ALJ to obtain additional evidence as warranted concerning the Claimant's impairments in order to complete the administrative record, which may include, if warranted and available, a consultative examination; give further consideration to the Claimant's maximum residual function capacity ("RFC") and provide appropriate rationale with specific references to evidence of record; and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the Claimant's occupational base and to determine whether the Claimant has acquired any skills that are transferable to other occupations.  (AR 11.)

2.      Whether the ALJ correctly found Rose Engel capable of performing the identified work at step 5.

3.      Whether the ALJ provided specific and legitimate reasons for rejecting probative medical source opinions.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273 , 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has

established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work.  Smolen, 80 F.3d at 1290.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations.  Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

### THE ALJ DECISION

In this case, the ALJ determined at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since March 15, 2010, the alleged onset date.  (AR 13, 111.)

At step two, the ALJ determined that Plaintiff has the following medically determinable severe impairments: repetitive trauma injuries both upper limbs (wrists, elbows, shoulders, trigger fingers) with persistent symptoms after repeated surgical intervention, degenerative psoriatic arthritis, psoriasis, rheumatoid arthritis (RA), obesity with possible sleep apnea, history of fusion surgery, degenerative disc disease (DDD), insomnia, and depression.  (AR 13-14.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (AR 14-16.)

The ALJ then found that Plaintiff has the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> Claimant can stand/walk two hours in an eight-hour workday; sit unlimited with normal breaks such as every two hours; lift/carry 10 pounds frequently and 10 pounds occasionally; and occasionally stoop and bend.  She can climb stairs, but she cannot climb ladders, working at heights or balance. She cannot do forceful gripping, grasping, or twisting, but she can do frequent fine manipulation such as keyboarding and frequent gross manipulation such as opening drawers and carrying files, (these limitations are bilateral).  She can do occasional neck motion but should avoid extremes of motion such as looking over her shoulder.  No working above shoulder level on either side.  The work environment should be air-

5

1   conditioned so there are no temperature extremes.  No concentrated

2   exposure to vibration.  She is limited to semiskilled work, svp 4 or less.

3   (AR 16-24.)  In determining the above RFC, the ALJ made an adverse credibility determination,

4   which Plaintiff does not challenge here.  (AR 17.)

5       At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a

6   medical assistant and house cleaner.  (AR 24.)  The ALJ, however, also found that, considering

7   Claimant's age, education, work experience, and RFC, there are jobs that exist in significant

8   numbers in the national economy that Claimant can perform, including the jobs of receptionist

9   and telemarketer.  (AR 25.)

10      Consequently, the ALJ found that Claimant was not disabled, within the meaning of the

11  Social Security Act.  (AR 25-26.)

12                          **DISCUSSION**

13      The ALJ decision must be reversed and remanded because the ALJ erred in not

14  obtaining an explanation from the VE for the variance in his testimony from the Dictionary of

15  Occupational Titles ("DOT").  The Court, however, finds no error in the ALJ's determination that

16  Ms. Engel has transferable skills or in the ALJ's treatment of the medical evidence.

17  **I.      THE ALJ DID NOT ERR IN DETERMINING THAT CLAIMANT
          ROSE ENGEL ACQUIRED TRANSFERABLE SKILLS**.

18      The ALJ determined at step four of the sequential process that Plaintiff is unable to

19  perform her past relevant work as a medical assistant (DOT 079.362-010).  (AR 24.)  The ALJ,

20  however, found at step five of the sequential process, based on the VE expert testimony, that

21  Plaintiff acquired work skills from her medical assistant job that are transferable to other jobs

22  existing in significant numbers in the national economy, specifically receptionist (DOT 352.667-

23  010) and telemarketer (DOT 299.357-014).  (AR 24-25.)  Consequently, the ALJ concluded that

24  Plaintiff was not disabled.  (AR 25.)

25      Plaintiff contends that the ALJ's transferability of skills analysis ("TSA") is deficient.  The

26  Court disagrees.

27

28

                              6

1          A.      Relevant Federal Law

2          Social Security Regulation § 404.1568(d) informs the TSA analysis.  Section 1568(d)(1)

3    defines transferable skills that can be used in other jobs "when the skilled or semi-skilled work

4    activities you did in past work can be used to meet the requirements of skilled or semi-skilled

5    work activities of other jobs or kinds of work."  Transferability "depends largely on the similarity

6    of occupationally significant work activities among different jobs."  Id.  Section 1568(d)(2)

7    provides that transferability is most probable when:

8                    (i)     The same or lesser degree of skill is required;

9                    (ii)    The same or similar tools and machines are used; and

10                   (iii)   The same or similar raw materials, products, processes or

11                            services are involved.

12   Section 1568(d)(3), however, cautions that complete similarity of these three factors is "not

13   necessary for transferability."

14         The Regulation contains special provisions for transferability of skills for persons of

15   advanced age (age 55 or older).  Plaintiff was 58 years old at the time of the May 7, 2014,

16   hearing.  (AR 98.)  Section 1568(d)(4) indicates that such persons cannot make an adjustment

17   to other work unless there are transferable skills.  The Regulation further provides that, if a

18   claimant of advanced age is limited to sedentary work, transferability can be found "only if the

19   sedentary work is so similar to your previous work that you would need to make very little, if

20   any, vocational adjustments in terms of tools, work processes, work settings, or the industry."

21         SSR 82-41 (1982 WL 31389) provides further gloss on transferability of skills.  SSR 82-

22   41, at *5 provides that transferability is most probable and meaningful among the jobs in which

23   the same or lesser degree of skill is required and that, generally, the greater the degree of

24   acquired skills, the less difficulty an individual will experience in transferring skills to other jobs.

25   SSR 82-41, at *5.  SSR 82-41, at *7, moreover, requires the ALJ to make findings of fact and

26   include them in the written decision.  More specifically, "when a finding is made that a claimant

27   has transferable skills, the acquired skills must be identified, and specific occupations to which

28   the acquired work skills are transferable must be cited . . . in the ALJ's decision."  See also

7

1   Bray v. Comm'r of Soc. Sec. Adm., 554 F.3d 1219, 1223-26 (9th Cir. 2009) (ALJ transferability

2   decision reversed for failing to make the findings required by SSR 82-41); Renner v. Heckler,

3   786 F.2d 1421, 1423 (9th Cir. 1986) (ALJ transferability decision reversed because no finding

4   on amount of vocational adjustment required).

5       **B.    Analysis**

6       The vocational expert, Luis Mas, Ph.D., testified that Claimant's past relevant work as a

7   medical assistant (DOT 079.362-010) was skilled, light exertion and svp (specific vocational

8   preparation) 6.  (AR 24.)  Dr. Mas also testified that the medical assistant job required "front

9   office skills, telephone work, use of a computer and working with the public."  (AR 24.)  He

10  further testified that someone with the skills required for the medical assistant job also could

11  perform the jobs of receptionist (DOT 352.667-010), semi-skilled, light, svp 3, and telemarketer

12  (DOT 299.357-014), semi-skilled, sedentary and svp 3.  (AR 24.)  The ALJ cited to Dr. Mas'

13  testimony that "Claimant's previous work is so similar to the jobs recited above that the

14  Claimant would need to make very little, if any, additional training, vocational adjustment in

15  terms of tools, work processes, work settings and the industry."  (AR 25.)  The ALJ concluded,

16  based on Dr. Mas' testimony, that Claimant had acquired skills from the medical assistant job

17  that were transferable to other representative jobs existing in significant numbers in the national

18  economy.  (AR 25.)

19      Thus, the ALJ made the findings required by SSR 82-41 and Section 1568(d).  Plaintiff's

20  arguments that these findings are insufficient lack merit.  Plaintiff contends that the ALJ erred in

21  not using the codes for Work Fields ("WF") and Materials, Products Subject Matter and

22  Services ("MPSMS") from an internal agency manual, Program Operations Manual System

23  ("POMS") DI 25015.017.  There are numerous problems with this contention.  First, POMS DI

24  25015.017 did not become effective until October 6, 2014, after the ALJ issued her decision in

25  this case on August 25, 2014.  See Lockwood v. Comm'r Soc. Sec., 616 F.3d 1068, 1072-73

26  (9th Cir. 2010) (version of POMS relied on was not even applicable at time of decision).

27  Second, the law is well established that unpublished internal policy statements are not binding

28  law that impose judicially enforceable duties on the ALJ or this Court; such agency statements

1   are entitled to respect but only to the extent that they have the power to persuade.  Id.  Third,

2   Court decisions have rejected the notion that use of the POMS WF and MPSMS codes is

3   required.  Garcia v. Astrue, 2012 WL 4091847, at *7 (E.D. Cal. Sep. 17, 2012); Nunez v.

4   Colvin, 2014 WL 4702508, at *5 (C.D. Cal. Sep. 22, 2014).  Fourth, POMS itself, like the

5   Regulations, does not require a complete similarly of all factors considered in evaluating the

6   degree of vocational adjustment required.  POMS DI 25015.17; Section 1568 (d)(3).

7          Finally, the ALJ here more than satisfied the requirements of SSR 82-41 and Section

8   1568(d).  The ALJ explained that Claimant's past relevant work as a medical assistant was a

9   complex, skilled job requiring light exertion and a specific vocational preparation of 6, which can

10  take over one year of training.  (DOT 079.362-010.)  (AR 24.)  By contrast, the receptionist

11  (DOT 352.667-010) and telephone solicitor (DOT 299.357-014) occupations require less skill.

12  The receptionist job is semi-skilled and light in exertion with a svp of only 3.  (AR 24.)  Similarly,

13  the telemarketer position is semi-skilled and sedentary with a svp of 3.  (AR 24.)  This

14  testimony by the VE adopted by the ALJ is sufficient to satisfy SSR 82-41 and Section 1568(d).

15  These sort of findings were sufficient in Nunez, 2014 WL 4702508, at *3-4.  No Court in this

16  Circuit has held otherwise.  Garcia, 2012 WL 4091847, at *8.  The ALJ's transferability of skills

17  finding is supported by substantial evidence.

18  **II.     THE ALJ ERRED IN NOT OBTAINING AN EXPLANATION
       FROM THE VE FOR HIS VARIANCE FROM THE DOT.**

19
20         The ALJ's RFC contains a limitation of "[n]o working above shoulder level on either

    side."  (AR 16.)  Plaintiff contends the alternate jobs of receptionist and telemarketer identified
21
    by the VE at step five of the sequential process conflict with the above RFC limitation.  Plaintiff
22
    further contends that there is a conflict between the VE testimony that Plaintiff can perform the
23
    identified alternate jobs, and the DOT, and that the ALJ failed to obtain an explanation from the
24
    VE about the conflict.  The Court agrees and remands for further findings.
25
           **A.     Relevant Law**
26
           The Commissioner bears the burden at step five of the sequential process to prove that
27
    Plaintiff can perform other work in the national economy, given her RFC, age, education, and
28

1   work experience.  20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir.

2   2000); 20 C.F.R. § 416.912(g).  There are two ways to meet this burden: (1) the testimony of a

3   VE, or (2) reference to the Grids.  Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d

4   1157, 1162 (9th Cir. 2001).  When a claimant suffers only exertional limitations, the ALJ must

5   consult the Grids.  Lounsburry, 468 F.3d at 1115.  A nonexertional impairment, however, may

6   limit the claimant's functional capacity in ways not contemplated by the Grids.  Tackett v. Apfel,

7   180 F.3d 1094, 1002 (9th Cir. 1999).  Thus, when a claimant suffers from both exertional and

8   nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of

9   "disabled."  Id. at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the

10  claimant will be awarded benefits.  Id. at 1155.  If not, the ALJ must use the Grids as a

11  framework for decision-making in determining how much the nonexertional limitations limit the

12  range of work permitted by the exertional limitations.  Tackett, 180 F.3d at 1102.  In such

13  instances, the ALJ must obtain the testimony of a VE to determine if there are jobs in the

14  national economy that the claimant can perform.  Id. at 1102; Osenbrock, 240 F.3d at 1162.

15       Typically, the best source of how a job is generally performed in the national economy

16  is the DOT.  Pinto, 249 F.3d at 845.  The DOT raises a presumption as to job classification

17  requirements.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may accept VE

18  testimony that varies from the DOT, but the record must contain "persuasive evidence to

19  support the deviation."  Id.  The ALJ has an affirmative responsibility to ask whether a conflict

20  exists between a VE's testimony and the DOT.  SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A.

21  Dec. 4, 2000); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is a conflict,

22  the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to

23  rely on the VE or the DOT.  Id.  Failure to do so, however, can be harmless error where there is

24  no actual conflict or the VE provides sufficient support to justify a variation from the DOT.  Id. at

25  1154 n.19.

26       **B.    Analysis**

27       To begin, the DOT describes the occupations of receptionist and telemarketer as

28  requiring "frequent reaching."  The DOT does not define "reaching" but the Commissioner has

1  described reaching as "extending the hands and arms in any direction."  SSR 85-15, at *7

2  (1985 WL 56857); see also Revised Handbook for Analyzing Jobs, Ex. 1 at 12-6.  Case law

3  has established that the DOT's "reaching" limitation includes above the shoulder reaching.

4  Newman v. Astrue, 2012 WL 1884892, at *5 (C.D. Cal. May 23, 2012); Hernandez v. Astrue,

5  2011 WL 223595, at *3 (C.D. Cal. Jan. 21, 2011); Mkhitaryan v. Astrue, 2010 WL 1752162, at

6  *3 (C.D. Cal. Apr. 21, 2010)

7      At the hearing, the ALJ admonished the VE as follows: "Please testify according to the

8  Dictionary of Occupational Titles, or explain why you are not testifying according to the

9  Dictionary of Occupational Titles, and state what your testimony is based upon."  (AR 97.)  The

10  VE responded, "I shall."  (AR 97.)  The VE then described the requirements of Claimant's past

11  relevant work as a medical assistant.  (AR 97.)  In response to the ALJ's hypothetical RFC that

12  included no work above shoulder level on either side, the VE testified that Claimant could not

13  perform her past relevant work as a medical assistant (AR 98), but that her skills would transfer

14  to the alternate jobs of receptionist and telemarketer.  (AR 98-99.)  As already noted, these

15  jobs require "frequent reaching."  The VE did not perceive or testify to any conflict between his

16  testimony and the DOT, nor offer any explanation for deviating from the DOT, if such a

17  deviance exists.

18      Two of the cases cited above establish that indeed a variance or potential variance

19  exists between the VE's testimony and the DOT's reaching limitation.  In Hernandez, Judge

20  Wistrich found an apparent inconsistency between a frequent reaching limitation and a RFC

21  preclusion of work at or above shoulder level.  2011 WL 223595, at *3.  The conflict was not

22  acknowledged nor reconciled in the VE's testimony.  Id.  The omission was error under

23  Massachi.  In Mkhitaryan, Judge Hillman on similar facts reversed and remanded because the

24  ALJ failed to recognize or explain the variance from DOT of a preclusion of over the shoulder

25  reaching.  2010 WL 1752162, at *3.

26      The Commissioner did not respond to Hernandez or Mkhitaryan even though cited by

27  Plaintiff.  The Commissioner relies instead on the decision of Price v. Astrue, 473 Fed. Appx.

28  566, 568-69 (9th Cir. 2012), which found no inconsistency between a claimant's reaching

1  limitations and the DOT.  Price held, "The vocational expert was well aware of the reaching

2  limitations and upon specific questioning by the ALJ testified they were within the classifications

3  in the Dictionary." Id. at 568.  Price, however, is of no help to the Commissioner.  Price does

4  not indicate what the Claimant's reaching limitations were (they could have been "occasional")

5  or whether there was a total preclusion of reaching about shoulder level.  Also, there was "no

6  specific questioning" in this case to determine whether a conflict existed as apparently took

7  place in Price.

8          In Mkhitaryan, moreover, the expert's knowledge of the claimant's reaching limitations

9  was not sufficient to avoid remand.  In Price, the expert's knowledge of the claimant's reaching

10  limitations was not sufficient by itself.  It also required "specific questioning" that apparently

11  indicated there was no conflict.  Again, such questioning did not occur here.  The

12  Commissioner, then, reads Price too broadly.  If the expert's knowledge of a claimant's

13  limitations were sufficient by itself, Massachi would become a dead letter.  The Court will not

14  read such a result into Price.

15          The VE and the ALJ failed to recognize a potential conflict between the reaching

16  limitations of the receptionist and telemarketer jobs and Claimant's RFC limitation of no above

17  the shoulder reaching.  The ALJ's error requires remand for further findings.

18  **III.    THE ALJ PROPERLY CONSIDERED THE MEDICAL EVIDENCE.**

19          Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Nguyen and other

20  physicians who opined she was precluded from all work.  The Court disagrees.

21          **A.     Relevant Federal Law**

22          The ALJ's RFC is not a medical determination but an administrative finding or legal

23  decision reserved to the Commissioner based on consideration of all the relevant evidence,

24  including medical evidence, lay witnesses, and subjective symptoms.  See SSR 96-5p; 20

25  C.F.R. § 1527(e).  In determining a claimant's RFC, an ALJ must consider all relevant evidence

26  in the record, including medical records, lay evidence, and the effects of symptoms, including

27  pain reasonably attributable to the medical condition.  Robbins, 446 F.3d at 883.

28

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians).  See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial

1  evidence only when it is consistent with and supported by other independent evidence in the

2  record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

3      **B.    Analysis**

4      Alleging disability since March 15, 2010, Plaintiff claims she cannot work due to carpal

5  tunnel syndrome, rheumatoid arthritis ("RA"), body aches, abdominal pain, trigger fingers, and

6  depression.  (AR 16.)  She testified her left shoulder became a major issue in 2012.  (AR 16.)

7  She claims she cannot raise or reach with her left hand.  (AR 16.)  Nonetheless, the ALJ

8  assessed Claimant with a less than sedentary RFC that would not preclude all work.  (AR 16.)

9      The ALJ found that Plaintiff's hypertension was benign with no evidence of functional

10  limitations and non-severe.  (AR 13-14.)  Notwithstanding claims of depression, the medical

11  evidence indicated that Claimant had no significant mental functional limitations.  (AR 14-16,

12  19.)  The ALJ, giving Claimant the benefit of the doubt, limited her to semi-skilled work.  (AR

13  15.)  Plaintiff does not take issue with these findings or with the ALJ's adverse credibility

14  determination.  (AR 17, 19.)

15      As the ALJ found, Plaintiff suffers from the severe medical impairments of RA, psoriasis,

16  and psoriatric arthritis.  (AR 13.)  Much of the evidence in the record is directed toward these

17  impairments.  Plaintiff's contention that she is unable to work is based chiefly on the opinion of

18  treating physician Dr. Thanh Nguyen.  (AR 18, 23, 466-69, 570-88.)  In a July 30, 2012,

19  Physical Residual Functional Capacity Questionnaire, Dr. Nguyen concluded that Plaintiff was

20  unable to work due to severe RA and psoriasis.  (AR 23, 570-574.)  Plaintiff complained to Dr.

21  Nguyen of severe pain in her hand and finger joints, as well as severe arthritic pain.  (AR 23,

22  570.)  Dr. Nguyen opined Plaintiff could sit, stand and walk six hours in an eight hour day, with

23  no assistive device needed, but never lift or carry.  (AR 23.)  She would have significant

24  limitations with reaching, handling, or fingering and would miss work more than 4 days per

25  month.  (AR 23.)

26      The ALJ gave Dr. Nguyen's conclusions little weight, "as the doctor's own reports fail to

27  reveal the type of significant clinical and laboratory abnormalities one would expect if the

28  Claimant were in fact disabled and the doctor did not specifically address this weakness."  (AR

23.)  The ALJ also noted that the more current treating notes did not indicate significant abnormalities on physical examinations.  (AR 23.)  An ALJ may reject a treating physician's opinion that is not supported or contradicted by his or her treatment notes.  Batson v. Comm'r, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); Bayliss, 427 F.3d at 1216.

Plaintiff disputes the ALJ's evaluation of Dr. Nguyen's treatment notes but fails to cite to abnormalities documented in the record that would support Dr. Nguyen's opinion in her July 30, 2012, questionnaire.  Plaintiff cites to findings of shoulder pain in 2014 (AR 575, 578, 582, 586), but fails to cite to anything in the record regarding Plaintiff's RA, psoriasis, or hands and fingers limitations.  These were the limitations on which Dr. Nguyen based her opinion.  The record shows Dr. Nguyen referred Plaintiff to an orthopedist for further evaluation of her shoulder (AR 582), which will be discussed below.  Plaintiff mistakenly refers to Dr. Nguyen as Dr. Trinh (JS 27:24) and then mistakenly cites records of Dr. Trinh as Dr. Nguyen's (JS 31:2-6, AR 599, 605, 610, 615, 620, 624).  Thus, Plaintiff cites nothing in Dr. Nguyen's treatment notes that support her July 30, 2012, opinion regarding RA, psoriasis, and hands and fingers limitations.

The ALJ also found that Dr. Nguyen's opinion "is without substantial support from the other evidence of record."  (AR 23.)  The contradictory opinions of other physicians provide specific, legitimate reasons for rejecting a physician's opinion.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Here, the ALJ relied heavily on the findings of treating rheumatologist Dr. Nina Trinh, who saw Plaintiff frequently from 2012 to 2014.  (AR 18-19, 520-23, 598-637.)  In February 2012, Dr. Trinh noted that Claimant was in no acute duress, had a normal heart rate, swelling but no tenderness of the fingers of the right hand, and tenderness but no swelling of the fingers of the left hand.  (AR 18.)  There was no tenderness or swelling of both elbows and no tenderness of both shoulders.  (AR 18.)  Her RA was mild to moderate and she has been taking Humira since 2010.  (AR 523.)  Dr. Trinh's most current physical examination on February 14, 2014, revealed she was in no current distress, there was no swelling or tenderness of the fingers of both hands, and no swelling or tenderness of both hands.  (AR 18-19.)  There was tenderness but no swelling of both wrists, no swelling or

tenderness of both elbows and some tenderness of both shoulders with impingement of right shoulder and unable to raise above head, and decreased range of motion to the left shoulder. (AR 18.)  There was decreased sensation of bilateral hands but no motor dysfunction and normal gait.  (AR 18.)

Dr. Trinh's findings are consistent with the opinions of other physicians.  Dr. Michael Marger, a treating physician, addressed Plaintiff's right shoulder pain.  (AR 18, 638-647.)  At a physical examination on June 24, 2013, Dr. Marger observed Claimant was in no acute distress, had mild to very mild impingement of the right shoulder, no tenderness of the right AC joint, and mild to very mild weakness of the right shoulder.  (AR 18.)  He referred her for physical therapy.  (AR 18.)

The testifying expert, Dr. John Morse, also opined that Claimant's RA was reasonably controlled with medications.  (AR 21.)  He noted joint shoulder pain due to osteoarthritis of the AC joint but was being treated conservatively, and he assessed no limitation of fine and gross manipulation.  (AR 21.)  He gave Plaintiff a light work RFC.  (AR 21.)  The ALJ gave his opinion lesser weight because Plaintiff's upper extremity limitations warranted greater limitations.  (AR 21.)  Dr. Samuel Landau, a testifying expert at the first hearing in 2012, noted trauma injuries of both upper extremities involving the wrists, elbows and shoulders.  (AR 21.)  He also noted degenerative psoriatric arthritis of the hand and psorias.  (AR 21.)  Dr. Landau assessed a sedentary RFC with limitations to which the ALJ gave greater weight than Dr. Morse's assessment.  (AR 21.)

Plaintiff relies on the January 5, 2010, opinion of Dr. Wade Faerber, a workers' compensation orthopedist, who opined that she cannot perform her current work (AR 374) which is not inconsistent with the ALJ's RFC.  Dr. Faerber also opined that she could not do "repetititve manual work."  (AR 374.)  Dr. Landau agreed she could not do repetitive work, but could do frequent fine manipulation such as keyboarding and frequent gross manipulation such as opening drawers and carrying files.  (AR 49-53.)  Plaintiff argues that she should be limited to less than frequent, but Dr. Landau was clear Plaintiff could do frequent fine manipulation, which is consistent with the more recent evidence of Dr. Trinh discussed above.

1    The ALJ also considered the opinion of Dr. Nicholas Rose, a workers' compensation

2    hand and upper extremity specialist.  (AR 20.)  He has conducted numerous surgeries of

3    fingers, elbow, wrists, and cervical fusion.  (AR 20.)  On March 8, 2010, Dr. Rose opined that

4    Plaintiff is permanently precluded from forceful or repetitive push/pulling or grasping with the

5    left hand and repetititve use of the left hand.  (AR 318.)  She was precluded from lifting more

6    than 10 pounds.  (AR 318.)  By June 12, 2012, Claimant was doing very well with her hands

7    and fingers, although she had some persistent stiffness.  (AR 20.)  She only takes ibuprofen.

8    (AR 20.)  On November 8, 2011, Dr. Rose indicated Plaintiff could continue regular work duties,

9    treated only with injections and home exercises.  (AR 20, 509.)  Plaintiff focuses on Dr. Rose's

10   March 8, 2010, opinion that precludes repetitive use of the left hand, but as noted above

11   repetitive is not frequent.  Plaintiff also fails to acknowledge the improvement in her hands

12   recognized by Dr. Rose in 2012 (AR 509) and subsequently confirmed by Dr. Trinh in 2012 in

13   2014.  (AR 18-19.)  The ALJ's RFC limitations of frequent fine manipulation and frequent gross

14   manipulation are supported by substantial evidence.

15   The ALJ rejected the June 2011 opinion of rheumatologist Dr. Azadeh Majlessi who

16   diagnosed psoriatric arthritis with low positive RF ("Rheumatology Factor") with moderate pain.

17   (AR 17, 22-23, 443.)  She opined Plaintiff was "not functionally well enough to do a regular job."

18   (AR 22, 443.)  The ALJ gave very little weight to Dr. Majlessi's opinion because it is "quite

19   conclusory, providing little explanation of the evidence relied on in forming that opinion."  (AR

20   22.)  An ALJ need not accept the opinion of a treating physician if that opinion is brief,

21   conclusory and inadequately supported by clinical findings.  Batson, 359 F.3d at 1195.  Here,

22   the ALJ found that Dr. Majlessi did not document positive objective clinical or diagnostic

23   findings to support the functional assessment.  (AR 22.)  The ALJ summarized Dr. Majlessi's

24   mild to moderate findings that contradict her RFC.  (AR 22-23.)  She found, for example, no

25   synovitis or deformity in the hands and her RA symptoms well controlled on medication.  (AR

26

27

28

17

23.)  Plaintiff noted Dr. Majlessi's opinion, although not by name, but offered no response to the ALJ's reasons for rejecting it.[2]

Plaintiff disagrees with the ALJ's treatment of the medical evidence, but it is the ALJ's responsibility to resolve conflicts in the medical evidence.  <u>Andrews</u>, 53 F.3d at 1039.  Where the ALJ's interpretation of the medical evidence is reasonable, as it is here, it should not be second-guessed.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ rejected the opinions of Dr. Nguyen and Dr. Majlessi for specific, legitimate reasons supported by substantial evidence.  The ALJ's treatment of the medical evidence was proper and reasonable, and supported by substantial evidence.  The ALJ's RFC is supported by substantial evidence.

## ORDER

IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this case for further proceedings in accordance with this Memorandum Opinion and Order and with law.

DATED: <u>October 23, 2015</u>                    <u>        /s/ John E. McDermott        </u>
                                                            JOHN E. MCDERMOTT
                                                   UNITED STATES MAGISTRATE JUDGE

---

[2]   In August 2011, consulting internist Dr. Haleh Safavi assessed Plaintiff with RA, observing that her hands did not show any sign of synovitis or evidence of deformity.  (AR 17.)  Her RA symptoms were well controlled with medication.  (AR 17.)  He noted a history of degenerative disc disorder in the neck and cervical spine.  (AR 22.)  He assessed Plaintiff with a light work RFC. (AR 22.)  The ALJ gave little weight to Dr. Safavi's RFC in light of the subsequent evidence that required greater limitations.  (AR 22.)  Plaintiff does not challenge this finding.